41 F.3d 1061
 Cheriee GAZETTE, Individually and as Personal Representative
of the Estate of Pamela Kay Bandy, Plaintiff-Appellant,
v.
CITY OF PONTIAC, a Michigan Municipality; Pontiac Police
Department, a Division of the City of Pontiac; Raymond
Sain, Detective; Gary D. Bass, Sergeant and other members
of the City of Pontiac Police Department, jointly and
severally, Defendants-Appellees.
 No. 93-1827.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 9, 1994.
Decided Dec. 8, 1994.
 
 Barry S. Fagan (argued and briefed), Michael J. Littleworth (briefed) and Nadia Ragheb, Dib & Fagan, Detroit, MI, for plaintiff-appellant.
 T. Joseph Seward and Marcia L. Howe (argued and briefed), Cummings, McClorey, Davis & Acho, Livonia, MI, for defendants-appellees.
 Before: BROWN, MARTIN and BOGGS, Circuit Judges.
 BOYCE F. MARTIN, JR., Circuit Judge.
 
 
 1
 Claiming that her decedent's rights of due process and equal protection under the Fourteenth Amendment, and her decedent's rights under the Federal Rehabilitation Act were deprived, Cheriee Gazette appeals the dismissal of her 42 U.S.C. Sec. 1983 claims. We affirm the dismissal.
 
 
 2
 Accepting Gazette's statement of the facts as true, the relevant events surrounding the tragic death of Pamela Bandy, Gazette's mother, are as follows. On September 18, 1990, Bandy was abducted from a car wash in Pontiac, Michigan by one of the car wash employees. At the time of the abduction, Bandy was a recovering alcoholic and recently had been released from an alcohol treatment program. Bandy's abductor placed Bandy in the trunk of her car, a white 1981 Fleetwood Cadillac, and drove around for six days until he was stopped by Pontiac police officers on an unrelated outstanding bench warrant on September 24. The police officers found Bandy's body in the trunk. She had died from starvation, dehydration, and methanol poisoning from drinking windshield fluid in the trunk. Bandy allegedly died twelve to thirty-six hours before her body was found.
 
 
 3
 On the morning of Bandy's abduction, Gazette called the City of Pontiac Police Department to report her mother's disappearance. The police knew Bandy prior to this incident and told Gazette that Bandy was an alcoholic and that she would come home when she had finished "bingeing." The police also told Gazette they had investigated the car wash for evidence of Bandy's disappearance when apparently they had not. Gazette asserts that had the police investigated the car wash they would have found obvious and conspicuous evidence of a physical and sexual assault. Also, Bandy's abductor drove Bandy's Cadillac, in which she was trapped, to the car wash and to police headquarters between September 18 and 24, and even engaged police officers in conversation concerning Bandy's disappearance, the status of the investigation, and identifiable features of her car. Gazette also gave the police Bandy's bank account information, but the police did not check to see if any withdrawals had been made from Bandy's account. Sometime between September 18 and 24, a bank camera videotaped Bandy's abductor withdrawing all the funds from her account.
 
 
 4
 Based on the foregoing events, Gazette filed a three-count complaint on September 23, 1992, against the City of Pontiac, its Police Department, and the named police officers in their individual capacities. The complaint contained federal civil rights claims alleging denial of due process, equal protection and violation of the Federal Rehabilitation Act as well as state law claims. Specifically, Gazette claimed that the defendants had a "special relationship" with Bandy because the police officers had made Bandy's situation much worse by their actions (and inaction). Gazette further claimed that the defendants deprived Bandy of her federal rights by their official policy, custom or practice of refusing, failing or neglecting to investigate missing persons and by lying and misleading the general public, and relatives of a missing person.
 
 
 5
 On April 26, 1993, the district court granted in part the defendants' Motion to Dismiss and for Judgment on the Pleadings with Sanctions, Fed.R.Civ.P. 12(b)(6), issuing an order dismissing the federal claims and remanding the state claims. For reasons stated at a hearing on the 12(b)(6) motion, the district court dismissed the claims as to the Police Department because it is not a "person" for Section 1983 liability. Next the court dismissed the due process claim against the City on the ground that the state has no affirmative duty to protect citizens from the actions of third parties. DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189, 195, 109 S.Ct. 998, 1002, 103 L.Ed.2d 249 (1989). The district court found that no "special relationship" existed between the City and Bandy giving rise to liability and that Gazette failed to plead facts sufficient to identify the City's custom, policy or practice that resulted in reckless indifference to Bandy's rights. City of Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); Monell v. Department of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Vinson v. Campbell County Fiscal Ct., 820 F.2d 194, 200 (6th Cir.1987). As to the individual police officers, the district court found that they retained their qualified immunity because they did not violate a clearly established constitutional right. Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Eugene D. v. Karman, 889 F.2d 701, 706 (6th Cir.1989) cert. denied, 496 U.S. 931, 110 S.Ct. 2631, 110 L.Ed.2d 651 ("the right the official is alleged to have violated must be 'clearly established' in a more particularized ... sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). Finally, the district court held that the Federal Rehabilitation Act, 29 U.S.C. Secs. 701-797, is inapplicable to Bandy's situation because the City's decisions concerning how to conduct law enforcement activities are not a "program" under the Federal Rehabilitation Act. The court held that the Police Department's law enforcement activities were not covered by the Federal Rehabilitation Act which outlaws discrimination in a treatment, education or training program receiving federal funds.
 
 
 6
 On May 6, 1993, Gazette filed a Motion for Reconsideration. The district court denied the motion. This timely appeal followed. On appeal, Gazette renews her due process, Federal Rehabilitation Act, and qualified immunity arguments. Gazette also argues that Bandy was deprived of equal protection by the police because they treated Bandy differently due to her status as an alcoholic. Gazette did not explicitly plead an equal protection claim, but rather chose to list a claim under "Amendment[ ] ... XIV." The district court did not address the substance of Gazette's equal protection claim at the 12(b)(6) hearing other than to proceed to dismiss all federal claims.
 
 
 7
 The district court's dismissal of a civil rights complaint on a 12(b)(6) motion is scrutinized with special care. Kent v. Johnson, 821 F.2d 1220, 1223 (6th Cir.1987); Brooks v. Seiter, 779 F.2d 1177, 1180 (6th Cir.1985). The Supreme Court has stated that 12(b)(6) motions should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Nishiyama v. Dickson County, 814 F.2d 277, 279 (6th Cir.1987) (en banc). Further, this Court, in reviewing the dismissal, must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein. Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir.1976). While we have stated that "a complaint need not set down in detail all the particularities of a plaintiff's claim," Westlake, 537 F.2d at 858, the complaint must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47, 78 S.Ct. at 103. Thus, a 12(b)(6) motion tests whether the plaintiff has stated a claim for which the law provides relief. For Gazette to succeed on appeal, we must find that the district court erred in its determination that Gazette failed to allege federal claims.
 
 
 8
 On appeal, Gazette insists that she has alleged federal claims against the defendants on two theories: 1) that the defendants, having created the danger, or made Bandy more vulnerable to danger, were required to take special actions on Bandy's behalf, and 2) that the actions and inaction of the police officers prove that the training and supervision they received was "so reckless and grossly negligent" that misconduct was "almost inevitable" or "substantially certain to result."
 
 
 9
 First, we observe that it is well established that a municipality may be held liable under Section 1983 only for its own unconstitutional or illegal policies. Monell, 436 U.S. at 691, 98 S.Ct. at 2036. A municipality may not be held liable for the actions of persons not acting under color of state law, such as private citizens. 42 U.S.C. Sec. 1983. In this case, Bandy's abductor, a private citizen, brutalized Bandy and placed her in the trunk of her car where she suffered a horrible death. We now turn to whether the City or the police officers can be liable for Bandy's death on either of Gazette's theories.
 
 
 10
 It has been recognized that a duty to protect a citizen may arise if the state has a special relationship with a person, such as when it takes a person into custody. Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (involuntary commitment of a mental patient); Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (incarcerated person). Outside of the custodial setting, we have recognized that police actions may give rise to a special relationship with a criminal or a victim that can create Section 1983 liability. In Janan v. Trammell, 785 F.2d 557 (6th Cir.1986), the state was held to have no duty to protect a boy from being murdered by a parolee absent a special relationship between the criminal and the state or between the victim and the state. See also Nishiyama, 814 F.2d at 279-80 (prisoner acted under color of state law when the state gave the prisoner the use of a marked patrol car, enabling him to stop and murder a motorist). Also outside the custodial setting, the Ninth Circuit has held that where the state creates a danger it owes a duty to provide some safety to the person endangered. Wood v. Ostrander, 879 F.2d 583, 589-90 (9th Cir.1989) (police left passenger on side of road in high-crime area after impounding car); see also DeShaney, 489 U.S. at 201, 109 S.Ct. at 1006. In DeShaney, the Supreme Court went further and stated that a duty to protect can arise in a noncustodial setting if the state does anything to render an individual more vulnerable to danger. However, DeShaney does not specify what actions of a state would render a person more vulnerable to danger, nor how much more vulnerable to danger a state must make a person before the person's due process rights are violated. DeShaney also recognized that the Due Process Clause does not bestow upon individuals an affirmative right to government aid, "even where such aid may be necessary to secure life, liberty or property interests of which the government itself may not deprive the individual." DeShaney, 489 U.S. at 196, 109 S.Ct. at 1003. Thus, the state does not violate an individual's due process rights by failing to protect him or her from the criminal actions of a private actor, absent some special relationship between the individual and the state actor giving rise to a duty to protect. DeShaney, 489 U.S. at 195-97, 109 S.Ct. at 1003-04.
 
 
 11
 Accepting Gazette's allegations as true, the facts of this case do not show such a special relationship between the City of Pontiac and Bandy. Bandy was never in the custody of the City. At most, the City and the police officers failed to rescue Bandy, and did not "create the danger" in which she found herself. Gazette may have a state law claim for gross negligence against the defendants, but these facts do not give rise to a constitutional tort under Section 1983.
 
 
 12
 The final part of the DeShaney analysis requires us to ask whether the City or the police officers rendered Bandy any more vulnerable to the danger she was already in by their actions. In Freeman v. Ferguson, 911 F.2d 52 (8th Cir.1990), the Eighth Circuit recognized the possibility of a constitutional duty to protect where state actions increase the vulnerability of an individual to private acts of violence "beyond the level it would have been at absent state action." Id. at 55. Gazette asserts that the "acts" rendering Bandy more vulnerable to the danger created by her abductor were the lies told by the police to Gazette and others concerning the investigation. In reliance on the police officers' misrepresentations, Gazette claims that none of Bandy's family or friends investigated the crime scene or the bank accounts themselves. Gazette's argument supposes that had family and friends investigated, they would have found the evidence of the crime and would have been able to take some action to rescue Bandy. Gazette argues that because of the misrepresentations, Bandy was more vulnerable to the danger than she would otherwise have been. Gazette's argument assumes a strong causal connection between the police officers' misrepresentations and Bandy's death.
 
 
 13
 There cannot be Section 1983 liability where the actions of one private individual leading to the injury or death of another individual are too remote from the allegedly wrongful state action. This Court, as well as the Supreme Court, has discussed the proximate cause required to sustain a Section 1983 claim. See Janan v. Trammell, 785 F.2d at 559 (discussing Martinez v. California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980)); City of Canton v. Harris, 489 U.S. at 385-86, 109 S.Ct. at 1203 ("[O]ur first inquiry in any case alleging municipal liability under Sec. 1983 is the question of whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."). In Martinez v. California, a fifteen year-old girl was murdered by a parolee. The survivors filed a complaint alleging that the state parole board knew of the parolee's dangerous propensities, and therefore the danger to their decedent. For purposes of deciding whether the state had deprived the girl of her life in violation of the Fourteenth Amendment, the supreme court accepted plaintiff's allegation that the state parole authority knew that releasing the parolee posed a clear and present danger of recidivism. The Supreme Court held that the state had not violated the Fourteenth Amendment because, under the facts, the girl's death was too remote from the parole board's actions to hold it responsible under Section 1983. In determining that proximate cause was not present, the Supreme Court noted that the parolee was not an agent of the parole board, that the murder took place five months after release, and that the board was not aware of any danger to the girl as distinguished from the public at large. Martinez, 444 U.S. at 285, 100 S.Ct. at 559.
 
 
 14
 The argument by appellant here is that there is a sufficient causal connection between the police officers' action of lying and Bandy's death to sustain a Section 1983 claim. We disagree. In this case, the Police Department knew only that Bandy was a missing person. At the time they lied to Gazette and others, the police did not know Bandy's location or whether she was safe or in danger. The only direct consequence of the police officers' actions alleged by Gazette is that Bandy's family and friends refrained from investigating in reliance on the police officers' misrepresentations. The logical weakness of this argument is apparent. There is no close causal connection between the police officers' lies and Bandy's death because many factors could have prevented the police officers, or Bandy's family and friends, from locating Bandy. The causal connection between the police officers' lies and Bandy's death simply is not sufficient to sustain a Section 1983 claim for deprivation of Bandy's due process rights under the Fourteenth Amendment. Martinez, 444 U.S. at 285, 100 S.Ct. at 559. If any "act" of the police might have made Bandy more vulnerable to danger, it was the decision of the police not to investigate the car wash and Bandy's bank account. However, as we noted earlier, DeShaney states that the Due Process clause does not guarantee any citizen the right to government aid, including a guarantee of rescue. DeShaney, 489 U.S. at 195, 109 S.Ct. at 1003 ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.").
 
 
 15
 Another reason why Gazette fails to state a federal claim concerns whether gross negligence is sufficient for Section 1983 liability. This Court, following the Supreme Court's decision in Collins v. City of Harker Heights, --- U.S. ----, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), has held that gross negligence is not the type of government action needed to support a Section 1983 claim. "Gross negligence is not actionable under Sec. 1983, because it is not 'arbitrary in the constitutional sense.' " Lewellen v. Metropolitan Gov't of Nashville, 34 F.3d 345, 351 (6th Cir.1994) (citing Collins, --- U.S. at ----, 112 S.Ct. at 1071). In Lewellen, the plaintiff was a construction worker who was severely injured when a piece of steel bridging he was carrying came in contact with a high-voltage power line. The power line was hanging within seven feet of his worksite. The plaintiff argued that the defendants should be liable under Section 1983 because they deliberately chose to build a school directly beneath a high-voltage conductor line, deliberately delayed the removal of the line, and willfully disregarded the very high risk of injury they had created. The plaintiff argued that, though the defendants did not intend to injure him, their actions were grossly negligent and close enough to intentional action to constitute a constitutional violation.
 
 
 16
 The nature of the defendants' actions in the instant case are similar to those of defendants in Lewellen. Here, defendants chose not to investigate a missing person complaint. They allegedly lied about the status of the investigation. However, in taking this course of action, they did not know Bandy's situation or where she was. Even if the defendants' actions were the proximate cause of Bandy's death (as we have said they were not), the defendants' actions cannot be characterized as intentional, but at most grossly negligent. Therefore, under Lewellen and Collins, the defendants' allegedly grossly negligent conduct is not sufficient to impose upon them Section 1983 liability. Gazette may have a state law claim for gross negligence, but these facts do not give rise to a constitutional tort under Section 1983.
 
 
 17
 Our inquiry as to Gazette's equal protection claim, one of several listed in the complaint, is whether the City and its police department had a rational basis for not investigating Bandy's disappearance because she was a known alcoholic. The status of being an alcoholic, or a recovering alcoholic, is not a suspect class for equal protection analysis, and so the lowest level of scrutiny applies to the defendants' action. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 445-46, 105 S.Ct. 3249, 3257, 87 L.Ed.2d 313 (1985). Accepting as true Gazette's allegation that the police treated the missing person complaint differently because Bandy was a recovering alcoholic (by failing to investigate for seven days), this Court need only determine whether the defendants' decision was rationally related to a legitimate state interest. We hold that it is rational for the defendants to decide not to investigate expeditiously the disappearance of a recovering alcoholic because the police have prior experience with the missing person and believe she is undergoing a "bingeing" episode. The defendants have a legitimate interest in determining how to allocate scarce police resources.
 
 
 18
 Related to Gazette's equal protection claim is her claim that the Federal Rehabilitation Act, 29 U.S.C Secs. 701-797, requires the defendants to not discriminate against Bandy due to her status as a recovering alcoholic. We agree with the district court that the actions of the defendants are not covered by the Federal Rehabilitation Act inasmuch as the Police Department's alleged "program" for finding missing persons is not a program covered by the Federal Rehabilitation Act.
 
 
 19
 Gazette also argues that, even absent a special relationship between the City and Bandy, the City had a custom, policy or practice of failing to train, supervise, or discipline its police officers and of failing to investigate missing persons and lying to members of the general public and family members of missing persons which led to the deprivation of Bandy's federal rights. Though no other Circuit has done so, Gazette argues that this Court should adopt the reasoning of the district court in Cerbone v. County of Westchester, 508 F.Supp. 780 (S.D.N.Y.1981), and hold that Gazette has stated a Section 1983 claim because the alleged single incident of illegality at issue is "unusually brutal or egregious, evidencing deliberate indifference or gross negligence on the part of the municipal officials." Cerbone, 508 F.Supp. at 783-84 (citation omitted). The Cerbone court also stated that the municipality is not liable unless "plaintiff was deprived of a legal right" by the official policy. Id. This Court has said that a Section 1983 plaintiff "must demonstrate that the policy 'actually caused the injury.' " Jones v. City of Carlisle, 3 F.3d 945 (6th Cir.1993) cert. denied, --- U.S. ----, 114 S.Ct. 1218, 127 L.Ed.2d 564 (1994) (citing City of Canton v. Harris, 489 U.S. at 390, 109 S.Ct. at 1205). We have already determined that the defendants did not deprive Bandy of any federal rights, because of the weak causal connection between defendants' actions and Bandy's harm and because grossly negligent conduct will not support a Section 1983 claim. Therefore, we need not reach the issue of whether the City had a policy, custom or practice which led to a deprivation of Bandy's rights.
 
 
 20
 Also, based on the foregoing, it follows that the district court was correct in deciding that the police officers are immune from Section 1983 liability. The Supreme Court has stated that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. at 818, 102 S.Ct. at 2738. Here, the police officers retain their qualified immunity because they did not violate a clearly established statutory or constitutional right.
 
 
 21
 The judgment of the district court dismissing the complaint is therefore affirmed.