91 F.3d 143
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edward Nelson HUNT, Plaintiff-Appellant
v.
Gary APPLEGATE; et al. Defendants,
James Holton, Sheriff Deputy; et al. Defendants-Appellees.
 No. 5-1062.
 United States Court of Appeals, Sixth Circuit.
 July 30, 1996.
Panel Decision on Petition to Rehear Dec. 31, 1996.
 
 Before: MERRITT, Chief Judge; MILBURN, Circuit Judge; and O'MALLEY, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Edward Nelson Hunt appeals the District Court's grant of summary judgment in favor of Defendants Prosecutor Jeffrey C. Middleton, Sheriff Matt Lori, Deputy James Holton, Deputy Robert Henkel, and St. Joseph County Michigan. Hunt alleges Defendants violated 42 U.S.C. § 1983 by failing to stop a pattern of threats and intimidation perpetrated against him by a neighbor. On appeal, the issues are whether the District Court erred when it found that: (1) Hunt failed to present sufficient evidence to support his claim of municipal liability; (2) Prosecutor Middleton was entitled to absolute immunity; and (3) Sheriff Lori, Deputy Holton, and Deputy Henkel were entitled to qualified immunity.
 
 
 2
 The facts of this case are troubling. The Plaintiff, Edward Hunt (a black man), presented evidence that his neighbor, Gary Applegate (who is white), subjected him to expressions of racial hatred and threats of death for over three years. In March 1990, Hunt reported to the police that Applegate had screamed racial insults at him and discharged several rounds from his shotgun in the direction of Hunt's house stating "I'm gonna kill your black ass." Although Defendant Middleton prosecuted Applegate for illegally discharging a firearm within 150 yards of an occupied dwelling, Applegate pleaded no contest and his sentence was deferred. The threats and assaults continued, and Hunt pleaded with local authorities to prosecute Applegate. He even gave the county prosecutor a copy of Michigan's ethnic intimidation statute. Mich.Comp.Laws § 750.147b. Yet no further action was taken against Mr. Applegate until after he had carried out his threats. In April 1991, Applegate shot Hunt four times as Hunt was attempting to retrieve his mail from the mailbox in front of his house. Applegate was found guilty by a jury of assault with intent to commit murder and use of a firearm in the commission of a felony.
 
 
 3
 The reasons given by the Defendants for failing to pursue Mr. Applegate before the April 1991 attack under the ethnic intimidation statute or other available laws are puzzling. For example, in November 1990, in the face of seemingly egregious violations of the ethnic intimidation statute, Prosecutor Middleton declined to issue a warrant for Applegate's arrest on such a charge, stating "I have a legitimate fear that if I authorize this I could potentially push Applegate over the brink and cause a death." In addition, the attitudes of Sheriff Lori and Deputy Holton with regard to the crime of ethnic intimidation raise serious questions about their knowledge of the statute. For example, the deposition testimony of Sheriff Lori reveals that he was not even aware that ethnic intimidation was a felony. He thought it was a misdemeanor. Deputy Holton testified at his deposition that Mr. Applegate's threats to Mr. Hunt (e.g. "you are a dead nigger") were not ethnic intimidation, because "I've heard black people call white people niggers." When asked: "If a white person were to call a black person a nigger while pointing a handgun at him would that be an act of ethnic intimidation?" Deputy Holton responded, "No."
 
 
 4
 Despite these facts, however, we must agree with the District Court that the Plaintiff did not produce sufficient evidence to prove that his constitutional rights were violated. To survive Defendants' motion for summary judgment, Hunt needed to offer some evidence to support his contention that the lapses by the local authorities were prompted by racial animus. For example, had Hunt offered competent evidence showing Defendants engaged in a general policy of selectively enforcing the law in a manner that disparately impacted racial minorities, an alternative ruling might have been justified. Hunt, however, offered no such evidence. The District Court even extended discovery for the specific purpose of allowing Hunt the opportunity to proffer evidence of discriminatory purpose. Hunt did not, or could not, do so. Having failed to come forward with evidence of an impermissible purpose, Hunt failed to satisfy his burden under Rule 56(c) and entry of judgment against him was appropriate.
 
 
 5
 For these reasons, the District Court's grant of Defendants' motion for summary judgement is hereby AFFIRMED.
 
 PANEL DECISION ON PETITION TO REHEAR
 
 6
 MERRITT, Circuit Judge.
 
 
 7
 The petition to rehear this case is now pending before the panel which originally heard the appeal. The petition characterizes this as a "failure to train" case. A member of the Court has suggested en banc review on this point. We address this point which we did not previously discuss. The plaintiff contends that the defendant local government, St. Joseph County, Michigan (not the prosecutor, the sheriff or any of the other individual defendants), had a "municipal policy" of failing to tell its prosecutors and sheriff deputies affirmatively to confiscate firearms and to enforce actively a new Michigan "ethnic intimidation" statute. Plaintiff calls this failure a "failure to train." This "failure to train" allegation is based on the proposition that the municipality had no specific municipal policy, different from or in addition to state policy, requiring prosecutors and police to confiscate weapons or requiring prosecutors to bring indictments under the new ethnic intimidation state.
 
 
 8
 City of Canton v. Harris, 489 U.S. 378 (1989), the only case relied upon by plaintiff on this failure to train theory, helps the County. In Canton, the Supreme Court reversed the Sixth Circuit for creating too lenient a standard of municipal liability under Monell v. New York City Dep't of Social Services, 436 U.S. 658 (1978). The Supreme Court held that the "policy" requirement limiting municipal liability in § 1983 cases under Monell can be satisfied in municipal "failure to train" cases only (1) where employees of a local government commit a constitutional violation (2) due to a lack of training by municipal policy makers (3) who are "deliberately indifferent" to the need for the training which would have avoided such constitutional violation. Obviously, the first thing required is a constitutional event, i.e., an underlying constitutional violation that the failure to train causes. Bad facts or a single outrageous event is insufficient. Some kind of wrong of constitutional dimension must be present. Monell, 436 U.S. at 690-91.
 
 
 9
 The City of Canton v. Harris standard is not met in this case because, as we held in our previous disposition, there was no constitutional violation committed by the individual municipal officers and employees in the first place. Individuals have no constitutional right to be free from harm inflicted by private actors. DeShaney v. Winnebago Cy. Dep't of Soc. Servs., 489 U.S. 189 (1989); Gazette v. City of Pontiac, 41 F.3d 1061, 1065 (6th Cir.1994) (state does not violate individual due process rights by failing to protect him or her from the criminal actions of a private actor absent some special relationship between the individual and the state actor giving rise to a duty to protect); Jones v. City of Carlisle, 3 F.3d 945 (6th Cir.1993), cert. denied, 510 U.S. 1177 (1994) (municipal policy must actually cause injury or create the danger that causes the harm for § 1983 liability to attach).
 
 
 10
 Here, the officers did not shoot or injure anyone, and there was no showing that the individual defendants or employees of the local government generally followed a practice of discriminating against the black citizens of the community in law enforcement. Not only does the plaintiff fail to define the constitutional violation committed by the individual defendants in this case to which the local policy makers are deliberately indifferent, but the plaintiff also fails to intimate who the municipal policy makers are who have failed to provide the training or acted with indifference. It is impossible to establish deliberate indifference to a constitutional violation through the failure to train when the constitutional violation itself does not exist or is left completely undefined and unformed and when the municipal policy makers at fault are not identified. Thus, in the absence of a constitutional injury committed by municipal employees and caused by a lack of training, there is no viable "failure to train" theory under City of Canton v. Harris.
 
 
 11
 Counsel for the plaintiff cites no case support for the proposition that the absence of a county policy concerning confiscation of weapons or prosecution under a new statute somehow constitutes a constitutional violation. Up until the present time, counties have been allowed not to have formal policies with respect to such matters. We find no cases indicating that it is unconstitutional for a county not to confiscate the firearms of citizens who live in the county nor do we find cases that hold that a county has a constitutional duty to tell its local prosecutors which state criminal statutes they must charge when indictments are sought for the prosecution of crime.
 
 
 12
 Here the prosecutor and the individual defendants arrested, prosecuted and convicted the perpetrator for attempted murder. The plaintiff does not claim that the county or its officials were guilty of ethnic intimidation themselves. Rather, he claims that one neighbor shot another as a result of racial antagonism and that the defendants did not use the ethnic intimidation statute to arrest the wrongdoer in advance of the shooting. Police, prosecutors, courts and local governments cannot insure the public against neighborhood violence, racial antagonism, or sexual assault, and it is not unconstitutional when they fail to do so.
 
 
 13
 Berry v. City of Detroit, 25 F.3d 1342 (6th Cir.1994), cert. denied, 115 S.Ct. 902 (1995), supports the municipal defendant in the instant case rather than the plaintiff. There our court set aside a jury verdict finding municipal liability for failure to train where a Detroit police officer shot the plaintiff's decedent. The theory was that the city failed to train its officers properly in the use of deadly force. The court stated that City of Canton v. Harris requires a constitutional violation by one or more municipal employees (there, allegedly the police shooting) plus deliberate indifference to the need for training in the use of weapons that cause such constitutional violations to occur. In the end, the Berry court was unable to find a failure to train, even though the Berry case was much stronger than this one. In Berry, at least there was a police shooting and an effort to tie it to the asserted failure to train. In this case, there is not even any police violence and no injury occurred to anyone during police custody. There is no remotely plausible theory for municipal liability for failure to train under Canton and Monell.
 
 
 
 *
 The Honorable Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation