106 F.3d 400
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Richard GOODMAN, Plaintiff-Appellant,
v.
CITY OF DETROIT and Albert Ammori, Defendants-Appellees,
Halabu Construction Company, Defendant.
 No. 95-1828.
 United States Court of Appeals, Sixth Circuit.
 Jan. 17, 1997.
 
 Before: JONES, RYAN, and MOORE, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Richard Goodman appeals the district court's judgment dismissing Goodman's 42 U.S.C. § 1983 claim, in which he alleges that the City of Detroit and Albert Ammori deprived him of constitutionally protected property rights without due process of law. Goodman argues that the district court erred in dismissing his claim on the ground that Goodman failed to show that he had a constitutionally protected property interest. For the reasons that follow, we will affirm.
 
 I.
 
 2
 In 1982, Goodman purchased property in Detroit known as the Croul-Palms Mansion, in order to use it as a law office. One of his reasons for buying the property was a desire to obtain a "historic designation," which would carry significant federal income tax benefits. Beyond tax benefits, he claims, a second reason for wanting the historic designation was the desire to influence "future development of adjacent property," as that property was occupied by an apartment house that was "completely vacant and clearly likely to be torn down and redeveloped." The property received an official historic designation in March 1984, and was then known as the Croul-Palms Historic District.
 
 
 3
 Goodman claims that at some unspecified time, he was told by William Worden, the staff director of the Detroit Historic Designation Advisory Board:
 
 
 4
 -"No building permit would be issued by the City for immediately adjacent property without full consideration ... of the effects" on Goodman's property;
 
 
 5
 -"No building permit would be granted to any developer on immediately adjacent property which would be out of character" with his property; and
 
 
 6
 -Goodman "would get notice ... prior to issuance of any building permit for immediately adjacent property."
 
 
 7
 In support of his claims in this appeal, Goodman relies on two sections of the City of Detroit city code, both of which fall within the section of the code entitled Historic Landmarks and Districts. The first, section 25-2-1, reads in pertinent part as follows:
 
 
 8
 Sec. 25-2-1. Purpose.
 
 
 9
 Historic preservation is declared to be a public purpose, and the city may regulate the construction, reconstruction, alteration, repair, moving and demolition of historic and architecturally significant structures within the limits of the city as provided in this article.
 
 The second is section 25-2-7:
 
 10
 Sec. 25-2-7. Effects of projects on districts.
 
 
 11
 (a) The head of any city agency having direct or indirect jurisdiction over a proposed city or city-assisted physical development project and the head of any city agency or authority or corporation established by the city having power to ... permit ... any physical development project shall, prior to authorization or approval, take into account the effect of the proposed project on any designated or proposed historic district. If the proposed project is within or immediately adjacent to a designated or proposed historic district, the responsible agency or authority or corporation shall so advise the historic district commission and shall comply with all reasonable requests of the commission for information on the proposed project. The commission shall determine the demonstrable effects of the proposed project and report same to the mayor and city council within sixty (60) days of being advised of the proposed project.... Nothing in this section shall be construed to require a delay or interruption in project activities pending completion of the commission's review and report. However, nothing in this section shall be construed to diminish the rights and powers held by the mayor and city council with respect to such project activities.
 
 
 12
 In March 1994, the City's Board of Zoning Appeals granted a permit to defendant Albert Ammori to construct a store with offstreet parking next door to Goodman's property. Goodman complains that "[t]his permit was granted with no notice to Plaintiff and no opportunity for hearing"; Goodman also alleges that the permit was issued "without any accounting as to the impact of the proposed construction on [the plaintiff's premises] and the historic district existing thereupon." It is Goodman's contention that Ammori's store will "irreversibly damage and destroy the historic nature of Plaintiff's Premises."
 
 
 13
 The plaintiff filed suit against the City of Detroit; Albert Ammori, the owner of the real estate adjacent to the plaintiff's property; and Halabu Construction Company, the entity hired by Ammori to construct the store. The plaintiff's second amended complaint states three counts. In Count I, the plaintiff states a claim under 42 U.S.C. § 1983, and alleges (1) that in 1983, the City of Detroit and Goodman created and established the Croul-Palms Historic District; (2) that in reliance upon representations by the City of Detroit that it would protect the Croul-Palms Historic District with respect to adjacent property, Goodman expended substantial sums in rehabilitating the property; and (3) that Goodman acquired property rights with regard to the historic district, both by virtue simply of creating the historic district, and by virtue of the zoning ordinances described above. Count II alleges that the non-state-actor defendants, Ammori and Halabu, conspired to deprive Goodman of his constitutional rights, and also purports to state a state-law nuisance claim against the individual defendants. Count III appears to allege a breach of contract claim against Ammori.
 
 
 14
 The district court issued an oral ruling granting a motion to dismiss filed by the City of Detroit pursuant to Fed.R.Civ.P. 12(b)(6). The court concluded that the plaintiff had no constitutionally protected property right, because the ordinances in question did not give rise to "legitimate right of entitlement to a benefit rather than a mere expectation of it." The district court also dismissed the supplemental state law claims. The plaintiff filed this timely appeal.
 
 II.
 
 15
 The district court's dismissal of a civil rights complaint under Fed.R.Civ.P. 12(b)(6) is scrutinized with special care. Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir.1994). "The Supreme Court has stated that 12(b)(6) motions should not be granted 'unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.' " Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).
 
 III.
 Section 1983 provides that
 
 16
 [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 17
 42 U.S.C. § 1983. To prevail in a civil rights action under section 1983, a plaintiff must plead and prove that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the Constitution and law of the United States. See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986); Paul v. Davis, 424 U.S. 693, 699-701 (1976).
 
 
 18
 The procedural due process limitation of the Fourteenth Amendment does not require that the government make a particular substantive choice in infringing on a person's rights; it simply requires that the government provide "due process" before acting on such a decision. It is well-settled, however, that no procedural due process duties are implicated when the plaintiffs fail to allege an underlying constitutionally protected right. See Gagliardi v. Village of Pawling, 18 F.3d 188, 193 (2d Cir.1994).
 
 
 19
 In Board of Regents v. Roth, 408 U.S. 564 (1972), the Supreme Court stated that "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." Id. at 576. The Court explained that
 
 
 20
 [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it....
 
 
 21
 Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.
 
 
 22
 Id.
 
 
 23
 "A state-created entitlement that cannot properly be eliminated except for cause is a property right of which the holder may not be deprived without procedural due process." RR Village Ass'n, Inc. v. Denver Sewer Corp., 826 F.2d 1197, 1201 (2d Cir.1987) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39 (1985)). "Conversely, if state law makes the pertinent official action discretionary, one's interest in a favorable decision does not rise to the level of a property right entitled to procedural due process protection." Id. at 1201-02. The distinction between mandatory language giving rise to a protected right, and discretionary language which gives rise to a mere "expectation," is one that has been often repeated in the applicable case law. As one court has phrased it, "[a] reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." Stiesberg v. State of California, 80 F.3d 353, 356 (9th Cir.1996); see, e.g., Sylvia Dev. Corp. v. Calvert County, Maryland, 48 F.3d 810, 826 (4th Cir.1995); Littlefield v. City of Afton, 785 F.2d 596, 601 (8th Cir.1986).
 
 
 24
 Goodman argues that Michigan law has conferred upon him a constitutionally protected property interest. Specifically, he relies upon case law standing for the proposition that a property owner has a vested interest in his zoning classification and in the classifications of immediately adjoining property, and that the property owner is entitled to a hearing before a change in zoning is enacted. He analogizes this case law to his situation, arguing that he effectively transferred an "historic easement" to the City, and thereby "obtained vested rights in the overall zoning scheme, including ... restrictions on building projects on the immediately adjacent property." He argues that these "vested rights" "entitled him to the benefits afforded by Detroit Zoning Ordinance 25-2-7(a)," set forth above and that by issuing a building permit to Ammori, "the City for all intents and purposes changed the zoning of the Croul-Palms property."
 
 
 25
 Goodman relies heavily on the Sixth Circuit decision in Nasierowski Brothers Investment Co. v. City of Sterling Heights, 949 F.2d 890 (6th Cir.1991), for his claim that he has a protected property interest that required the City of Detroit to give him notice and a hearing before granting a building permit to Ammori. We think, however, that Nasierowski, and the related Michigan case law to which Goodman invites our attention, are of no help to him, as they are completely inapposite. The cases do not stand for the proposition, as Goodman suggests, that whenever a property owner expects a certain state of affairs to remain constant, and invests money in reliance on that expectation, he then has a right to that constancy. That characterization of the cases, in fact, begs the question, as the question of the existence of a property right comes before that: that is, the plaintiff in Nasierowski had a property right in his zoning classification because Michigan law explicitly prescribed that certain measures must be undertaken before the zoning classification could be changed, and that property right then vested because he undertook a substantial act in reliance on that zoning classification. Thus, the mere fact of Goodman's reliance and substantial outlay of money cannot transform a mere expectation into an entitlement, if, as indeed is the case, the ordinance and oral representations he points to created only an expectation.
 
 
 26
 It is, in other words, essential that we consider the ordinance and the oral representations made by director Worden to determine whether they create a property right, before turning to a consideration of the substantial reliance, vel non, of Goodman. The ordinance states only that the City "shall take into account the effect" of a new development; this language ties the City's hands not at all and it cannot, therefore, give rise to a property interest on the part of Goodman.
 
 
 27
 As to Worden's alleged oral representations, they were either completely discretionary in nature, like the ordinance, or, at most, representations about a procedure that would be followed. With respect to the latter, the Supreme Court has repeatedly rejected the notion that procedures alone can create a substantive right entitled to procedural due process protection. See Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983). Goodman was told he would receive notice before a permit was issued, but he was not told that a permit would not issue without his approval; he was not told a permit would not issue except pursuant to certain defined standards; and he was not told anything that would entitle him to think that in designating his own property as historic, he acquired some rights over the use of neighboring property. Like the ordinances, then, the oral representations were insufficient to create a property interest giving rise to procedural due process rights.
 
 IV.
 
 28
 We AFFIRM.