CLAY, Circuit Judge,
concurring in part and dissenting in part.
I concur in the majority’s decision to reverse the district court’s dismissal of Counts One and Two of the complaint; however, because I believe that the district court’s dismissal of Counts Three and Four should also be reversed, I respectfully dissent from the majority’s decision to affirm the dismissal of these counts.
I disagree with the majority’s application of what it considers to be the appropriate standard under which the substantive due process claim of Quintana Claybrook (“Ms. Claybrook”), as set forth in Counts Three and Four, should be analyzed. The majority applies the “conscience shocking” standard used for situations involving instances when police officers are called to make “fast action[s]” such as when facing an ensuing prison riot or when in the throes of a high-speed chase. Under such circumstances, a much higher standard of fault, such as “ ‘whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm,’ ” must be shown in order to hold a police officer liable. See County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 1720, 140 L.Ed.2d 1043 (1998) (quoting Whitley v. Albers, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). Because the record does not support the majority’s application of this standard, the less stringent standard of culpability—that which is considered “something more than negligence but less than intentional conduct, such as recklessness or gross negligence”—should be applied. See Lewis, 523 U.S. 833, 118 S.Ct. at 1718 (internal quotation marks omitted). Under this standard, coined by the Supreme Court as “deliberate indifference,” a question of fact remains for trial as to whether the officers’ conduct regarding Ms. Claybrook rose to this level.
In Lewis, the Supreme Court reviewed the range of conduct under which a substantive due process claim may arise under the Fourteenth Amendment. See 118 S.Ct. at 1717. The Court began by reiterating the long-held standard that one may state a claim of deprivation of substantive due process by alleging conduct *362 “ ‘that shocks the conscience’ and violates the ‘decencies of civilized conduct.’” Id.. (quoting Rochin v. California, 342 U.S. 165, 172-73, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). However, the Court went on to recognize that the measure of “what is conscience-shocking is no calibrated yard stick,” and observed that “[rjules of due process are not ... subject to mechanical application [such that] [djeliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking.” Id. at 1717-1719. The Court emphasized that liability may lie for actions that amount to “deliberate indifference” where the officials involved enjoyed the luxury of “time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations.” Lewis, 118 S.Ct. at 1720. The Court explained as follows:
When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking. But when unforeseen circumstances demand an officer’s instant judgment, even precipitate recklessness, fails to inch close enough to harmful purpose to spark the shock that implicates “the large concerns of the governors and the governed.”
Id. (quoting Daniels v. Williams, 474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).
When conducting an “exact analysis” of the facts of this case in the light most favorable to Ms. Claybrook, it is clear that the officers had sufficient time to make an unhurried judgment about their conduct upon seeing Mr. Claybrook with his weapon such that a lower level of fault should be applied. As the officers testified, they were aware of department rules requiring them to radio for a marked car and uniformed officers, and they made a conscious decision to request such support. The officers were also aware that the department rules mandated that they refrain from investigating the situation unless emergency circumstances arose. Significantly, at the point when they discovered Mr. Claybrook standing outside with this gun, Officer Birchwell testified that he did not believe that the officers were in imminent danger or that exigent circumstances requiring the use of force existed. However, after having made a decision to request backup, the officers inexplicably proceeded to engage Mr. Claybrook in a violent confrontation without awaiting the arrival of the uniformed officers. Contrary to the majority’s assertion, the officers here were hardly involved in a high-speed pursuit or any high-pressure confrontation at the time that they decided to act, as were the officers in Lewis. See 118 S.Ct. at 1720-21. As such, Ms. daybook’s claims should be analyzed using the “deliberate indifference” standard; which is to say, her claim should be viewed in the context of whether the officers had time to make a reasoned judgment about their conduct. Id.; see Moreland v. Las Vegas Metro. Police Dep’t, 159 F.3d 365, 373 (9th Cir.1998) (recognizing that the critical question when applying the appropriate standard of culpability under Lewis is “whether the circumstances allowed the state actors time to fully consider the potential consequences of their conduct”).
When viewing the officers’ actions under this standard, questions of fact remain for the jury to decide with respect to whether the officers’ conduct violated. Ms. Clay-brook’s substantive due process rights. For example, questions of fact exist as to whether the officers observed Ms. Clay-brook enter the car or reasonably should have known that Ms. Claybrook was in the car, in that if the officers passed by the market at the time they claimed, a reasonable person could believe that they observed Ms. Claybrook leaving the market and entering the car. Furthermore, a question of fact exists as to whether the *363 officers should have provoked the confrontation with Mr. Claybrook before the uniformed back-up officers arrived, and whether they should have identified themselves as police officers when Mr. Clay-brook refused to throw down his gun, as opposed to firing at him. Indeed, the officers testified that they attempted to pull out their badges only “during the gunfire,” or after the gunfire had already begun. Notably, there were no emergency circumstances present so as to require the officers to begin shooting without following protocol and without making a reasoned decision as to whether the vehicle was occupied. Accordingly, under these circumstances, a jury should decide whether the officers acted with deliberate indifference to Ms. Claybrook’s rights. See Lewis, 118 S.Ct. at 1719 (noting the instances of “deliberate indifference” could be found in the context of pretrial custody where “forethought about an inmate’s welfare is not only feasible but obligatory under a regime that incapacitates a prisoner to exercise ordinary responsibility for his own welfare”); see also Stemler v. City of Florence, 126 F.3d 856, 868 (6th Cir.1997) (suggesting that under substantive. due process, “ ‘a duty to protect can arise in a noncustodial setting if the state does anything to render an individual more vulnerable to danger’ ”) (quoting Gazette v. City of Pontiac, 41 F.3d 1061, 1065 (6th Cir.1994)). Reasonable minds surely could differ as to whether the plainclothes officers’ decision to open fire on Mr. Clay-brook at nine o’clock in the evening outside of a market in an area where patrons of the store could have been seated in their vehicles, when the officers admitted that they did not feel that they were in imminent danger, rose to the level of deliberate indifference to Ms. Claybrook’s rights. Indeed, a reasonable person could conclude that officers who open fire on a public street at nine o’clock in the evening when they are in no imminent danger have every reason to believe that they may recklessly injure members of the public. Under the facts presented by this case, Ms. Claybrook should not be deprived of her right to trial on the question of whether the circumstances of the shooting violated her substantive due process rights.
Accordingly, I would reverse the district court’s dismissal of Ms. Claybrook’s claim against the officers for violation of her substantive due process rights as set forth in Counts Three and Four of the complaint. I would also reinstate the supplemental state law claims.