**James Ricky JONES; Vera Jones, Plaintiffs–Appellants,**

**AIK Selective Self–Insurance Fund, Intervening Plaintiff,**

v.

**CITY OF CARLISLE, KENTUCKY; Preferred Risk Mutual Insurance Company; Mark Byrd, Defendants–Appellees.**

No. 92–6103.

United States Court of Appeals, Sixth Circuit.

Argued June 8, 1993.

Decided Aug. 27, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 13, 1993.

Frank H. McCartney (briefed), Flemingsburg, KY, Leslie Rosenbaum (argued & briefed), Kimberly H. Price, Rosenbaum & Rosenbaum, Lexington, KY, for plaintiffs-appellants.

Leslie Patterson Vose, Jane D. Samuel (argued), Landrum & Shouse, Lexington, KY, Henry Watson, Cynthiana, KY, for defendant-appellee City of Carlisle, KY.

Bernard D. Leachman, Jr. (argued & briefed), Louisville, KY, for defendant-appellee Preferred Risk Mut. Ins. Co.

Benjamin J. Hays, Hays & Hays, Winchester, KY, for Mark Byrd.

Before: GUY and SUHRHEINRICH, Circuit Judges; and DOWD, District Judge.*

DOWD, District Judge, delivered the opinion of the court.

## I.

The appellants, James Ricky Jones (hereafter "Mr. Jones") and his wife Vera Jones (hereafter collectively "the Joneses") challenge the district court's dismissal of their action brought against the City of Carlisle, Kentucky (hereafter "the City") under 42 U.S.C. § 1983. The Joneses also challenge the district court's remand to state court of their claim against defendant Preferred Risk Mutual Insurance Company (hereafter "Preferred Risk") for declaratory relief.

The Joneses claim that the appellee City of Carlisle is liable pursuant to § 1983 for money damages for the physical injuries Mr. Jones suffered in the November 13, 1990 automobile accident cause by Mark Byrd (hereafter "Byrd"), a private citizen of Kentucky. The Joneses also seek a declaration from the court that they are entitled to $100,000 on Mr. Jones' underinsured motorist policy.

The Joneses allege that the City incurred § 1983 liability for Mr. Jones' injuries when it allowed Byrd, a known epileptic prone to uncontrollable seizures, to maintain a driver's license. The Joneses also challenge Preferred Risk's position that under the terms of the underinsured motorist policy, it does not incur liability until after the policy holder obtains a judgment against the tort-feasor and the tort-feasor's insurance is insufficient to cover the insured's judgment.[1]

The district court dismissed the § 1983 claim against the City for failure to state a cause of action under Fed.R.Civ.P. 12(b)(6).

The district court found that Byrd was not acting as the agent of the City at the time of the accident, and that Mr. Jones, as distinguished from the public at large, was not placed in special danger as the result of the City's inaction and Byrd's continued activity. Further, the district court found that no special relationship existed between the City and Mr. Jones nor between Byrd and Mr. Jones which would impose upon the City a duty of care owed to Mr. Jones. The district court remanded the Joneses' declaratory judgment claim against Preferred Risk to Nicholas County, Kentucky.

## II.

■ In evaluating the propriety of a dismissal under Rule 12(b)(6), this Court must "consider the pleadings and affidavits in a light most favorable to the plaintiff." *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981) (citations omitted). Further, the factual allegations in the complaint must be treated as true. *Collins v. Nagle*, 892 F.2d 489, 493 (6th Cir.1989). To withstand a challenge under Rule 12(b)(6), it must be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).[2]

The complaint alleges that Mark Byrd is an epileptic who has suffered from an uncontrolled seizure disorder since birth. In 1983, Kentucky issued Byrd a driver's license. Between 1983 and 1987, Byrd was involved in at least seven automobile accidents in the City of Carlisle. Each accident was allegedly caused by Byrd experiencing a seizure while driving, and each accident resulted in either property damage, personal injury, or both.

---

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

1. The Complaint also advanced several state tort claims against the City and Byrd.

2. The Joneses argue that the summary judgment standard identified in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), represents the applicable standard of review for the present case because certain depositions were submitted by them with their Re-

sponse Brief. However, the Motions to Dismiss were not transformed into summary judgment motions because the district court specifically stated that it was granting a Rule 12(b)(6) dismissal and it is apparent from the decision that the district court did not rely on the outside evidence submitted in rendering its decision. *Atkins v. Louisville and Nashville R. Co.*, 819 F.2d 644 (6th Cir.1987). *See, e.g., Friedman v. United States*, 927 F.2d 259 (6th Cir.1991).

The City police investigated each accident; however, no accident report was ever filed. No citation was ever issued and no law enforcement action was ever taken against Byrd.

In the accident involving Mr. Jones, Byrd, as in his other accidents, was operating a motor vehicle when he experienced an epileptic seizure. He lost control of his vehicle, crossed over the center line into the oncoming lane of traffic, and struck head-on the motor vehicle operated by Mr. Jones, who was severely and permanently injured. Byrd was never cited and no law enforcement action was taken against him as a result of this accident.

### A. Section 1983 Analysis

The Joneses bring the present lawsuit claiming that the City was aware that Byrd presented a danger to motorists but took no action to revoke his driver's license. Under Kentucky statutes, law enforcement officials are required to file with the Department of State Police a written report of any motor vehicle accident resulting in personal injury or property damage. Ky.Rev.Stat. § 189.-635(3). This report must also be submitted to the Kentucky State Police. Ky.Rev.Stat. § 189.635. Further, Kentucky will suspend the license of a driver upon notice from law enforcement officials that the driver is subject to epileptic seizures. 601 Ky.Admin.Regs. 13:010.

The Joneses advance three claims under 42 U.S.C. § 1983 against the City. First, they claim that it was the policy of the City both to fail to report accidents involving individuals suffering from epileptic seizures and to allow Byrd, a known epileptic prone to seizures, to maintain a driver's license and operate a motor vehicle. Second, the Joneses claim that the City's failure to train and supervise its police has caused the City Police to be inadequate to the tasks performed by them, especially as concerns the duty of the police officer as regards unfit and unsafe operators of motor vehicles. This failure to train, the Joneses allege, also results in § 1983 liability attaching to the City. Third, the Joneses claim that Mr. Jones, as a citizen of the United States and of Kentucky, is entitled to the protection of the laws of both, and that the City's actions, policies, or customs deprived Mr. Jones of this entitlement. The Joneses argue that, absent these policies, individual officers would have reported the prior accidents as required under state law, Byrd's license would have been revoked, and the accident involving Mr. Jones would never have occurred.

■ The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." However, the Due Process Clause does not "protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago County Soc. Serv. Dept.*, 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989).

In *DeShaney*, a mother and her son brought suit against a county agency claiming that it was responsible for the brutal beating the son received at the hands of his father. After a divorce, the court had awarded custody of the boy to his father. On numerous occasions, the boy was brought to the emergency room with injuries that suggested child abuse. Further, the defendant agency was made aware of these suspicious injuries. Nonetheless, the agency took no steps to protect the boy from his abusive father. The child was eventually beaten so severely by his father that he suffered permanent brain damage.

The Court held that the defendant agency did not violate the son's due process rights because the boy's injuries were caused by a private actor, and that the agency had no control over the father. The Court noted that the agency did not cause the injuries and there was no special relationship between the boy and the agency or between the father and the agency which would trigger an obligation to take affirmative action to prevent future abuse. According to the *DeShaney* Court, the fact that the defendant agency was aware of the potential danger was not sufficient to impose a duty to act.

In the earlier case of *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), the Court held that the state officials were not liable when a parolee murdered a fifteen year old girl. The Court found that the officials did not cause the crime, that the parolee was not acting as an agent of the state, and that the victim did not face any special danger apart from the rest of society.

The Sixth Circuit has also applied the analysis employed in *DeShaney*. In *Janan v. Trammell*, 785 F.2d 557 (6th Cir.1986), a case filed two years prior to *DeShaney*, a boy was murdered by a parolee. The boy's family brought suit against the Parole Board claiming that it was aware of the parolee's dangerous propensities and had a duty to protect society from him. The court held for the Parole Board, finding no duty to protect the victim from the parolee. The court first noted that the parolee was not a state officer acting under color of state law. The court then announced the rule to be applied in the Sixth Circuit regarding injuries suffered and damages incurred at the hands of private actors:

> [T]he proper analysis is whether a special relationship exists between the criminal and the victim or between the victim and the state or whether there is some showing that the victim, as distinguished from the public at large, faces a special danger by the parolee's release. In so holding, we follow other circuits that have held that absent a special relationship between the criminal and the victim or the victim and the state, no due process violation can occur.

3. Here the city was liable for violating a city clerk's due process rights when it initiated a work program where prisoners performed manual labor around the City Hall grounds. On one particular day, the city clerk was abducted by two of the prisoners working on City Hall grounds who were not eligible for work release, but were accidentally allowed to participate. The court held that there was a special relationship between the city clerk and the city as she was obligated to work in the same area where the city had determined it would initiate the prisoner work program. The court also found a special custodial relationship between the city and the prisoners. Further, the court found that the plaintiff clerk faced a special danger separate from the remainder of the community because

*Id.* at 560 (citations omitted). *See also Cornelius v. Town of Highland Lake, ALA,* 880 F.2d 348 (11th Cir.1989).[3]

A due process violation was found in *Nishiyama v. Dickson County, Tenn.,* 814 F.2d 277 (6th Cir.1987), where a county prisoner was entrusted with a patrol car for his private use, absent any supervision. While driving the police car, the prisoner used the flashing blue light to pull over the decedent's car and then beat her to death. At trial, it was determined that it was the policy of the Sheriff's Department to allow the prisoner to drive the car unsupervised. It was also determined that the Sheriff was aware that the prisoner had been using the patrol car to pull motorists off the road for several hours before the victim was killed but did nothing to stop this conduct.

The court found a special relationship between the defendant Sheriff's Department and the prisoner, as the prisoner was being held in custody, albeit with substantial privileges. Further, the court noted that, unlike *Martinez* and *Janan*, the defendants put into motion the actions which eventually caused the victim's death. The court observed that "the officers gave [the prisoner] the car *and* the freedom to commit the crime." *Id.* at 281 (emphasis in original).

■ Unlike the defendant in *Nishiyama,* the City of Carlisle did not cause plaintiff's injuries; the injuries were caused by Byrd, a private individual. Byrd was not acting as the agent of the City, nor was there a special relationship between the City and Byrd or between the City and Mr. Jones.[4] Further,

she was constantly in contact with the prisoners from the work program.

4. The Joneses argue that *DeShaney* does not impose upon the claimant the showing of a special relationship between the City and the tort-feasor or the City and the claimant. We read *DeShaney* to hold that in some circumstances the Constitution imposes upon the State an affirmative duty of care and protection based upon the relationships between the State and the parties. However, the *DeShaney* Court specifically found that no special relationship existed between DeShaney and the defendant agency or between the abusive father and the agency, and affirmed the dismissal of the petitioners' § 1983 action on those grounds.

while Byrd was a definite danger behind the wheel of a motor vehicle, he was no more a danger to Mr. Jones than to any other citizen on the City streets. Finding that the Joneses have failed to establish a special relationship required to invoke the due process protection of the Fourteenth Amendment, the district court was correct in granting the City's motion to dismiss the Joneses' § 1983 claim based on an alleged policy of not submitting accident reports in cases involving epileptic seizures.

■ In support of their claim of failure to train, the Joneses cite *Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In *Harris,* police officers failed to provide the plaintiff with medical attention once she was taken into custody. The Court found a due process violation because of the special relationship that the plaintiff and the city had based upon the custody of the plaintiff. However, the Court noted that "a municipality can be liable under § 1983 [for a failure to train] only where its policies are the 'moving force [behind] the constitutional violation.'" *Id.* at 389, 109 S.Ct. at 1205 (citation omitted).

As the district court held, the Joneses' reliance on *Harris* is misplaced. It is true that the Supreme Court in *Harris* held that a municipality may be liable under § 1983 for failure to train or supervise law enforcement officials where such failure constitutes "deliberate indifference" to the rights of an individual. However, the analysis of a § 1983 failure to train claim does not stop there. As the *Harris* Court noted, to prevail, a § 1983 plaintiff must demonstrate that the policy "actually cause[d] injury." *Id.* at 390, 109 S.Ct. at 1205. In *Harris,* the plaintiff suffered injury at the hands of a state actor. In contrast, Mr. Jones' injuries were caused by a private actor. While the City did nothing to prevent Byrd from driving, this inaction was not the "moving force" behind Mr. Jones' injuries. His injuries were directly caused by the epileptic seizure Byrd experienced while he was operating his vehicle. As a result, the Joneses' § 1983 claim of failure to train or supervise was appropriately dismissed by the district court.

The district court also appropriately dismissed the Joneses' "entitlement" claim against the City. This claim that Mr. Jones was entitled to the protection of the laws of the United States and Kentucky represents nothing more than a "failure to protect" claim under the Fourteenth Amendment. As previously noted, the *DeShaney* Court definitively held that while the Due Process Clause of the Fourteenth Amendment prevents a State from depriving individuals of life, liberty, or property without due process of law, it does not impose upon the State an affirmative obligation to protect private individuals from the conduct of other private citizens. *DeShaney, supra* 489 U.S. at 195, 109 S.Ct. at 1003.

As the *DeShaney* Court observed, this type of § 1983 analysis often renders harsh results, especially when innocent individuals suffer injuries while local governments stand idly by. *DeShaney, supra* at 203, 109 S.Ct. at 1007. However, this Court, like the *DeShaney* Court, is unable to extend the reach of the Due Process Clause of the Fourteenth Amendment to cover common law tort actions between private citizens.

### B. Declaratory Judgment Analysis

The Joneses also challenge the district court's decision to remand their declaratory judgment action against Preferred Risk to Nicholas County. In remanding to state court, the district court noted that it has discretion in determining whether to hear an action for declaratory relief. 28 U.S.C. § 2201. *Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.,* 746 F.2d 323 (6th Cir. 1984).

■ The Joneses do not challenge the district court's remand of their action for declaratory judgment, recognizing the court's discretion. *Allstate Ins. Co. v. Mercier,* 913 F.2d 273 (6th Cir.1990). However, the Joneses contend that the district court failed to consider their second cause of action against Preferred Risk, that being a diversity action for money damages, arguing that a federal district court should not refuse to hear a claim where the elements of diversity jurisdiction have been met. *Meredith v. City of Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943).

 

A review of the Complaint reveals that the Joneses did not plead a cause of action against Preferred Risk separate and apart from their declaratory judgment claim. While the Complaint makes reference to the $100,000 insurance the Joneses allege they are entitled to, the prayer merely seeks a declaration that they are entitled to that amount. The reference to the specific amount of $100,000 is made merely to define the content of the declaration.

The argument that the Joneses advanced two separate causes of action against Preferred Risk is further belied by the Joneses' post-judgment Motion to Alter, Amend, or Vacate filed with the district court, (Docket Nos. 46, 47). In addition to objecting to the dismissal of the § 1983 claim against the City, the Joneses challenged the remand of the declaratory judgment claim without indicating to the district court that their complaint could be construed to include a diversity action against Preferred Risk separate and apart from their declaratory judgment claim.[5]

■ The declaratory judgment action against Preferred Risk was originally filed in district court. It was consequently improper for the district court to remand it to a state court. Therefore, the Joneses' declaratory judgment action is remanded to the district court for entry of an order of dismissal without prejudice.[6]

### III.

For the reasons stated above, the judgment of the district court is AFFIRMED IN PART and REMANDED IN PART for entry of an order consistent with this opinion.

---

**5.** The Joneses filed a supplemental motion in which they identified a recent Kentucky Supreme Court decision which expanded the rights of insureds to obtain underinsured motorist coverage in the event that they settle with the tort-feasor. *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895 (Ky. 1993). The *Coots* decision has no bearing on the present action as the claim for damages was never before the district court.

**6.** This Court observes that having disposed of the federal claims, it was also within the district court's discretion to dismiss the remaining pendent state claims against Byrd and the City. Pendent jurisdiction "is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).