NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0023n.06

No. 21-3620

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

DEBRA SMITH,

     Plaintiff-Appellee,

v.

GALLIA COUNTY, OHIO JAIL, et al.,

     Defendants,

SHERIFF MATT CHAMPLIN; CHIEF DEPUTY
TROY JOHNSON; GALLIA COUNTY, OHIO
COMMISSIONERS,

     Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jan 11, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

Before: GIBBONS, ROGERS, and NALBANDIAN, Circuit Judges.

ROGERS, Circuit Judge. Debra Smith was working as a corrections officer at the Gallia County Jail when several inmates injured her during an escape. At the time of her injuries, Smith was on duty with another female corrections officer. Smith sued the jail and several local officials under 42 U.S.C. § 1983, alleging that her substantive due process rights were violated by the jail's failure to follow its policy of having both male and female guards on duty when inmates are both male and female. The district court held that Smith stated a substantive due process claim under the state-created-danger exception. This was error, however, because Smith has failed to allege facts demonstrating the presence of a special relationship or that the state created a special danger by placing two female corrections officers on duty at the same time. In addition, because Smith

has not stated a claim that an underlying constitutional violation occurred, the county cannot be liable under *Monell v. Department of Social Services*. *See* 436 U.S. 658 (1978). Finally, with respect to Smith's state-law claims, the defendants are entitled to statutory immunity.

Debra Smith began working as a correctional officer at Gallia County Jail in 2015. Matt Champlin, the Sheriff of Gallia County, "was responsible for the training and supervision of all" corrections officers and inmates in the jail. The Chief Deputy of Gallia County, Troy Johnson, was also responsible for supervising jail operations. In 2017, the Gallia County Sherriff's Office, led by Champlin, established a policy that "[w]hen both males and females are housed in the jail at least one male and one female staff member shall be on duty at all times." Smith claimed that the purpose of the policy was "to protect female corrections office[r]s against the potential threat of violent male criminals" and to "protect the privacy of inmates" by ensuring that they could face "same sex correction[s] officers in times of privacy." In an alleged violation of the policy, however, Smith was occasionally placed on duty with only another female corrections officer while there were male inmates in the prison.

On or about September 29, 2019, Smith was on duty with only one other female corrections officer despite the presence of male inmates. Smith and the other female corrections officer were assaulted by four male inmates in connection with their escape from the jail. One of the inmates held a knife to Smith's neck, and Smith stated she "suffered serious physical and mental injuries" as a result of the attack. Smith also asserted more generally that the defendants "have a history of ignoring inhumane conditions at the jail and contributing to unhealthy and dangerous conditions at the facility for inmates and staff." For example, Smith alleged that the Ohio Bureau of Adult Detention permitted the jail to house eleven inmates at a time, but on September 29 the jail

contained about forty inmates. Smith also asserted that "numerous escapes and attempt[ed] escapes" had occurred at the jail.

Smith sued the Gallia County Sheriff's Office, Gallia County Jail, Sheriff Matt Champlin, and Chief Deputy Troy Johnson under 42 U.S.C. § 1983, alleging that the defendants violated her rights under the Eighth and Fourteenth Amendments. Smith also claimed that the county was liable under *Monell v. Department of Social Services* for failing to train or establishing a policy that was a moving force behind the constitutional violation. *See* 436 U.S. 658 (1978). Smith further alleged that the defendants were negligent. The defendants filed a motion to dismiss for failure to state a claim, and Smith filed an amended complaint. In the amended complaint, Smith dismissed the Gallia County Jail and added the Gallia County Commissioners and individual county commissioners as defendants. Smith specified that she was asserting both equal protection and substantive due process claims under the Fourteenth Amendment, reiterated her *Monell* claim, and alleged that defendants were liable for negligence and negligence per se in violation of Ohio law. Smith added state-law claims for negligent training or supervision, premises liability, and battery. The defendants filed a second motion to dismiss for failure to state a claim. In response, Smith dismissed the Gallia County Sheriff's Office and the individual county commissioners as defendants, leaving only the Gallia County Commissioners, Sheriff Matt Champlin, and Chief Deputy Troy Johnson. To the extent the defendants are sued in their official capacities, the suit is effectively against the county. *See Pineda v. Hamilton County*, 977 F.3d 483, 494 (6th Cir. 2020). Additionally, Champlin and Johnson are named in their individual capacities. In short, then, the remaining defendants are Champlin and Johnson in their individual capacities, plus the county.

The district court granted the motion to dismiss in part and denied it in part. The court held that Smith did not state an Eighth Amendment claim because she was not "incarcerated for a crime

3

or involuntarily confined such that it can be said she is being 'punished.'" Although Smith "adequately pled purposeful or intentional gender-based discrimination," she did not state an equal protection claim under the Fourteenth Amendment because she did not "allege that she suffered an adverse employment action." However, the court held that Smith stated a Fourteenth Amendment substantive due process claim under the state-created-danger exception. The court also determined that Smith stated a *Monell* claim against Gallia County for a failure to train, or for maintaining a policy or custom, that enabled the underlying substantive due process violation. Turning to Smith's state-law claims, the court held that Smith could not state a cause of action for battery and also dismissed the negligence per se claim. The court declined to grant qualified immunity to Champlin and Johnson on both the federal and state-law claims, concluding that the immunity determination was premature at the motion to dismiss stage. Consequently, the only remaining claims were the § 1983 substantive due process claims against Champlin and Johnson, the *Monell* claim against Gallia County, and the state-law negligence claims against Gallia County, Champlin, and Johnson. All three defendants appeal. Champlin and Johnson argue on appeal that Smith did not state a claim for a substantive due process violation, and that even if she had, Champlin and Johnson were entitled to qualified immunity. The county asserts that Smith did not state a *Monell* claim, and the county, Champlin, and Johnson all argue that they are entitled to statutory immunity on the state-law claims.

Smith does not state a substantive due process claim under either the state-created-danger or special relationship exceptions, so the district court erred when it denied the defendants' motion to dismiss.[1] To survive dismissal of her § 1983 claim, Smith must demonstrate that the defendants

---

[1] Because Smith does not sufficiently allege that a constitutional violation occurred, it is not necessary to address separately the issue of whether there was a violation of a clearly established constitutional right.

violated her rights under the Constitution, here the Fourteenth Amendment. *See Sexton v. Cernuto*, 18 F.4th 177, 184 (6th Cir. 2021). But Smith's claim turns on the defendants' failure to protect her from inmate violence, and the Fourteenth Amendment "generally confer[s] no affirmative right" to government protection from private violence. *See id.* at 186 (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)). Consequently, Smith must demonstrate that one of two limited exceptions applies, either a state-created-danger or a special relationship. *See Est. of Romain v. City of Grosse Pointe Farms*, 935 F.3d 485, 491-492 (6th Cir. 2019); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 366 (6th Cir. 2012). Both exceptions rely on the government's having undertaken "'to assume some responsibility for [the] safety and wellbeing' of an individual." *See Sexton*, 18 F.4th at 186 (quoting *DeShaney*, 489 U.S. at 200).

The state-created-danger exception does not apply because Smith has not sufficiently alleged any of the three independent requirements to state such a claim. *See M.J. ex rel. S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 448 (6th Cir. 2021). Smith must demonstrate "an affirmative act by the state which either created or increased the risk that [she] would be exposed to an act of violence by a third party." *Id*. at 449 (quoting *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003)). Smith is next required to demonstrate "a special danger to [her] wherein the state's actions placed [her] specifically at risk, as distinguished from a risk that affects the public at large." *Id*. (quoting *Cartwright*, 336 F.3d at 493). The final requirement is "that the state was aware of the 'substantial risk of serious harm' and responded in a way that was 'conscience shocking.'" *Id*. (quoting *Jane Doe v. Jackson Local Sch. Bd. of Educ.*, 954 F.3d 925, 934 (6th Cir. 2020)).

First, there is arguably no affirmative act alleged in this case. Smith argues that the defendants acted affirmatively when they enacted the gender policy and then chose not to follow

it. It is true that the affirmative act inquiry focuses on "whether [the victim] was safer before the state action than he was *after* it," and Smith alleged that the failure to follow the policy increased her risk of violence from male inmates. *See Wilson v. Gregory*, 3 F.4th 844, 859 (6th Cir. 2021) (quotation omitted). But the defendants have a strong argument in response, because "failure to act is not an affirmative act under the state-created danger theory." *See id.* (quoting *Cartwright*, 336 F.3d at 493). Furthermore, defendants argue that the risk Smith faced stemmed from her employment as a corrections officer, and "[e]ven affirmatively returning a victim to a preexisting situation of danger does not create or increase the victim's risk of harm" as required to show an affirmative act. *See Stiles ex rel. D.S. v. Grainger County*, 819 F.3d 834, 855 (6th Cir. 2016).

Even if we assume for purposes of argument that the affirmative action requirement has been met, however, Smith has not alleged a special danger placing her specifically at risk, apart from the requirements of her employment. In cases where we have held that the special danger requirement was met, the government knew the identity of a specific victim who was at risk of harm. *See, e.g., Caldwell v. City of Louisville*, 120 F. App'x 566, 573 (6th Cir. 2004); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998). "In the only cases where we have recognized a 'state created danger,' the government could have specified whom it was putting at risk, nearly to the point of naming the possible victim or victims." *Jones v. Reynolds*, 438 F.3d 685, 696 (6th Cir. 2006). On the other hand, we have held that the special danger requirement was not met in cases in which the government was unaware of a specific or targeted risk to a particular individual. *See, e.g., Jones*, 438 F.3d at 697; *Schroder v. City of Fort Thomas*, 412 F.3d 724, 729 (6th Cir. 2005). This case falls into the latter category because there is no evidence that the defendants knew of any threat to Smith as a specific individual.

The district court's reliance on our unpublished opinion in *Waller v. Trippett* is thus misplaced. *See* 49 F. App'x 45 (6th Cir. 2002). In *Waller*, the defendant (a prison official) knew that a particular inmate had committed violent knife crimes against women, yet still permitted that inmate to work on kitchen duty with access to knives. *See id.* at 47. The officials ignored a female kitchen employee's request that the inmate not be near her, and the inmate proceeded to use a knife to stab and kill the kitchen employee. *See id.* We held that there was a special danger to the victim because she "was a member of a limited and specifically definable group," and the defendant's conduct put the "members of that group at substantial risk of serious, immediate and proximate harm." *See id.* at 50-51. In contrast to the risk to the specifically identifiable victim in *Waller*, however, in this case there was no evidence of a specific risk to Smith in particular. Smith does not plead any facts indicating that the defendants were aware that having two female corrections officers on duty without a male colleague posed a special danger to the female corrections officers. It is true that Smith alleged that there had been previous escapes from the jail and that the jail was significantly overcrowded at the time she was attacked. But Smith does not state any facts demonstrating that jail officials knew that those conditions caused a specific risk to female corrections officers if they were on duty without a male colleague.

Finally, even if generously assuming affirmative action and a specific risk, it is beyond debate that the risk in this case does not shock the conscience. The fact that Smith was placed on duty with a fellow female corrections officer cannot in any way be described as "conscience shocking." The state-created-danger exception "imposes a demanding standard," one that is met at a minimum by "a showing of at least deliberate indifference." *See M.J. ex rel. S.J.*, 1 F.4th at 448-49. The demanding standard is not met by the defendants' apparent belief that Smith and her fellow female corrections officer did not need a male colleague on duty with them in order to

perform their job. We recently held in *Jane Doe* that the state-created-danger exception did not apply when school officials placed a misbehaving student next to a kindergartner on a bus and the misbehaving student then sexually assaulted the kindergartner. *Jane Doe*, 954 F.3d at 935-36. We noted that the "conscience shocking" standard is not met by choices that represent "the practicalities of day-to-day governance [that] require officials to make difficult allocation choices and tradeoffs." *Id*. at 936 (quotation omitted). If government choices that led to the sexual assault of a kindergartner did not qualify as "conscience shocking," then Champlin and Johnson's belief that two female corrections officers could sufficiently perform their jobs without a male colleague present certainly does not fall into that category.

Smith's alternative argument—that the special relationship exception applies—also fails. The special relationship exception is inapplicable because Smith was a government employee at the time of the incident, not a prisoner or other individual under state control. The special relationship exception applies when the state places a "significant restraint on [an] individual's personal liberty," which "typically requires 'some state action that applies force (or the threat of force) and show of authority made with the intent of acquiring physical control.'" *See Sexton*, 18 F.4th at 186 (quoting *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005)). The voluntary employer-employee relationship does not cause a "restraint" on the employee. This conclusion is supported by *Collins v. City of Harker Heights*, in which the Supreme Court held that substantive due process did not require the government "to provide its employees with a safe working environment." 503 U.S. 115, 126 (1992). The Court emphasized that it had "previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law." *Id*. at 128.

8

In sum, Smith's substantive due process claim does not fit within traditional substantive due process principles or either of the two narrow exceptions recognized by the Supreme Court in *DeShaney*. *See* 489 U.S. at 200. Indeed, extending the exceptions as Smith argues would swallow the rule, expanding substantive due process into an engine constitutionalizing every claim of physical harm resulting from government failure to follow one of its own safety policies.

In the absence of a sufficient allegation of a constitutional violation on the part of Champlin and Johnson, Smith's *Monell* claim against Gallia County founders as well. Generally speaking, and certainly in this case, liability under *Monell* fails without an underlying constitutional violation on the part of an employee. *See Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014); *see also Sensabaugh v. Halliburton*, 937 F.3d 621, 630 (6th Cir. 2019).

Finally, Gallia County, Champlin, and Johnson are all entitled to statutory immunity on Smith's state-law claims. Smith claims that Gallia County is liable under Ohio law governing municipal liability, and that Champlin and Johnson can also be held liable for negligence in their individual capacities. First, Gallia County is entitled to statutory immunity because the relevant conduct involved the exercise of its governmental responsibilities. Under Ohio law, Gallia County is a "political subdivision [that] is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Rev. Code Ann. § 2744.02(A)(1). Overseeing Sheriff Champlin, the jail, and policies enacted to operate the jail are quintessential government functions, and the statute specifically provides that a "governmental function" includes the "operation of jails." *Id.*; *see Porter v. Probst*, 18 N.E.3d 824, 832 (Ohio Ct. App. 2014). The only possibly relevant exception to statutory immunity, which provides that "political subdivisions are liable for injury, death, or loss to person

or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions," does not apply. Ohio Rev. Code Ann. § 2744.02(B)(2). Running the county jail is a government function, not a proprietary function, which involves "activities that are customarily engaged in by nongovernmental persons," such as operating a utility company. *See* Ohio Rev Code Ann. §§ 2744.01(C)(1), (G)(1)(b).

Second, Champlin and Johnson in their individual capacities are also entitled to statutory immunity on Smith's state-law claims because Smith has not pled any facts demonstrating that Champlin and Johnson acted in a way that would deprive them of statutory immunity under Ohio law. *See* Ohio Rev. Code Ann. § 2744.03(A)(6). As state employees, Champlin and Johnson are entitled to statutory immunity unless they acted "manifestly outside the scope of [their] employment" or acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code Ann. § 2744.03(A)(6). Smith does not dispute that Champlin and Johnson acted within the scope of their employment. Consequently, Champlin and Johnson are "immune from liability" unless they acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code Ann. § 2744.03(A)(6).

Smith has not alleged any facts indicating that Champlin or Johnson acted "with malicious purpose" or "in bad faith" by permitting two female corrections officers to work without a male corrections officer on duty. Smith has also not pled any facts demonstrating that Champlin and Johnson acted in a "wanton or reckless manner," which the Ohio Supreme Court described as "rigorous standards that will in most circumstances be difficult to establish" in the law enforcement context. *See Argabrite v. Neer*, 75 N.E.3d 161, 164 (Ohio 2016). First, "wanton misconduct" is "the failure to exercise *any* care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Id*. (quoting *Anderson v. Massillon*, 983

N.E.2d 266, 273 (Ohio 2012)) (emphasis in original).  As discussed above, Smith has not alleged that Champlin and Johnson believed that there was a "great probability" of harm that would arise from placing two female corrections officers on duty without a male colleague.  Second, "reckless conduct" is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id*. (quoting *Anderson*, 983 N.E.2d at 267).  Again, Smith has not asserted that permitting two female corrections officers to work without a male colleague involved a "known or obvious risk of harm."  Smith did not allege that it should have been "obvious" to Champlin and Johnson that female corrections officers could not safely perform their job without the assistance of male colleagues.

Accordingly, we reverse the judgment of the district court.